ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
AJAY KRISHNAMURTHY (CABN 305533)
ALETHEA M. SARGENT (CABN 288222)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    eric.cheng@usdoj.gov
    ajay.krishnamurthy@usdoj.gov
    alethea.sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NOS. 4:23-CR-00264 JSW-1 <br> 4:24-CR-00157 JSW |
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| PATRICK JAMES BERHAN, | |
| Defendant. | |

## I. INTRODUCTION

Beginning in 2019, Defendant Patrick James Berhan, a sworn police officer with the Pittsburg Police Department (PPD), devised a scheme and conspiracy to defraud his employer and other police departments. He not only tasked his then-girlfriend ("Individual-1") to obtain a college degree for him and then presented that fraudulent degree to PPD for his own reimbursements and pay raises, but further organized and led a conspiracy with five other officers to pay her to get the same results—Morteza Amiri, Samantha Peterson, Amanda Theodosy a/k/a Nash, Ernesto Mejia-Orozco, and Brauli Rodriguez Jalapa.

In addition, while Defendant orchestrated this scheme to defraud, he also illegally obtained, possessed, and distributed Schedule III controlled substances to other law enforcement officers—specifically, anabolic steroids.

Defendant's criminal conduct in both schemes continued in earnest until he became aware that he might be investigated by federal authorities; he then immediately took action to destroy physical evidence of the crimes and delete related communications and records, directing Individual-1 to do the same.

For the reasons set forth below, the United States respectfully requests that the Court sentence Defendant to 24 months of imprisonment, which is in the middle of the Guideline range set forth in the PSR, followed by three years of supervised release with an order of restitution. Such a sentence would be sufficient, but not greater than necessary, based on a consideration of the Guidelines—which appropriately includes enhancements for Defendant's leadership role in the conspiracy and his obstruction of justice—and the factors under 18 U.S.C. § 3553(a), given the seriousness of the offense, its nature and circumstances, Defendant's history and characteristics, and the need for deterrence.

## II. BACKGROUND

### A. Factual Background[1]

Defendant was employed as a Police Officer by the Pittsburg Police Department (PPD) in California.

---

[1] The facts set forth in this section are drawn from the PSR and the parties' Plea Agreement, paragraph 2. *See* 23-CR-264, Dkt. No. 137; 24-CR-157, Dkt. No. 10.

Case No. 4:23-CR-00264:

The City of Pittsburg offered its employees, including PPD employees, reimbursements toward higher education tuition and expenses, as well as educational incentive pay upon completion of a degree. Defendant was enrolled at University-1, a distance learning institution that offered classes online toward a Bachelor of Science degree in Criminal Justice.

Beginning in 2019, Defendant devised and participated in a scheme to defraud to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by omission and concealment of material facts. Defendant tasked "Individual-1" to complete coursework for him. Specifically, Individual-1 completed approximately nineteen (19) courses for him between June 2019 and August 2019 to earn a Bachelor of Science in Criminal Justice at University-1. At Defendant's direction, Individual-1 signed into University-1's online platform as him and completed coursework, wrote and submitted essays, and completed exams on his behalf. University-1 thereafter, in or about August 2019, awarded a Criminal Justice degree to Defendant based on the coursework that Individual-1 had falsely completed in his name and for his benefit. On the basis of the University-1 degree that Individual-1 completed in his name, Defendant then fraudulently applied to the City of Pittsburg for and received tuition and expense reimbursements and increases to his pay.

Defendant also promoted Individual-1's services to take and complete similar University-1 coursework for other employees of law enforcement agencies. In exchange for payment (either paid directly to Individual-1 or via Defendant), Individual-1 signed into University-1's online platform as the person and completed online University-1 courses for that person toward his or her undergraduate or graduate degree at University-1. Specifically, Individual-1 completed coursework for multiple other employees of law enforcement agencies toward their own Criminal Justice degrees at University-1 to receive increases to their pay, including Morteza Amiri and Samantha Peterson, who were employed with the Antioch Police Department; Amanda Theodosy a/k/a Nash and Ernesto Mejia-Orozco, who were officers with PPD; and Brauli Rodriguez Jalapa, who was an officer with PPD and then Oakland Housing Authority.

For instance, on or about December 10, 2020, Mejia-Orozco asked Berhan, "Yo. Your girl still up for banging out some classes?"; "Can she do 4 for 1K cash rite now lol!!!!!"; and "I got 7 left I

think." PSR ¶ 27. Berhan responded, "Ya she said she'll do it." *Id.* On or about January 16, 2021, Mejia-Orozco asked Berhan "Hey when your girl bangs out these classes I'll only have 3 left. She wanna just do those too? If so how much?" *Id.* Berhan responded, "Ya she'll do them 700." *Id.*

Defendant received cash payments from Mejia-Orozco and Rodriguez on Individual-1's behalf on multiple occasions for Individual-1's completion of their University-1 coursework as part of this scheme to defraud. Defendant also benefited from the payments received by Individual-1 in furtherance of the scheme in light of his relationship with Individual-1 at the time.

Defendant's false statements, misrepresentations, and omissions described above as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property. Defendant acted with the intent to defraud, that is, the intent to deceive and cheat.

In the parties' plea agreement, Defendant agreed that the money and property Defendant obtained through this scheme to defraud was no less than $16,137.89 in increased pay and $5,100 in reimbursements from the City of Pittsburg. Defendant further agreed that total losses due to this scheme to defraud, including those sustained by the City of Pittsburg and City of Antioch, were no less than $66,534.25.[2]

Case No. 4:24-CR-00157:

Defendant also knowingly obtained and possessed anabolic steroids, which are Schedule III controlled substances. In addition to personally using anabolic steroids, Defendant also knowingly obtained and possessed anabolic steroids with the intent to distribute them to other persons in exchange for payment using electronic payment services such as Venmo and Zelle. Defendant distributed anabolic steroids to other law enforcement officers at PPD and APD, up to and including in May 2021.

Obstruction

On or about May 13, 2021, Defendant learned that one of the officers to whom he distributed anabolic steroids was placed on administrative leave by the Antioch Police Department. Foreseeing that the officer would be investigated or prosecuted by local, state, and/or federal authorities, and in view of

---

[2] The government has recalculated the restitution owed as a result of the conspiracy as **$59,598** following the trial in *United States v. Morteza Amiri*, 23-cr-264-2.

Defendant's actions described above, Defendant destroyed electronic records and other evidence related to the scheme to defraud and his possession of controlled substances, as described above. Specifically, Defendant deleted the contents of his cell phone and cloud data, which contained relevant communications and records, and instructed Individual-1 to delete the contents of her electronics and cloud data as well. Moreover, Defendant collected anabolic steroids and other evidence in his possession and disposed of them in a third-party dumpster nearby his residence. By destroying this evidence, Defendant acted corruptly and intended to impair the integrity and availability of this evidence for use in official proceedings, including any investigation and prosecution related to his above actions.

### B.   Procedural History

Defendant was charged in an Indictment in Case No. 23-CR-264 on August 16, 2023 with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 (Count One) and Wire Fraud in violation of 18 U.S.C. § 1343 (Count Two). *Id.*, Dkt. No. 1.

On March 13, 2024, Defendant was charged in an Information in Case No. 24-CR-157 with Possession with Intent to Distribute Anabolic Steroids in violation of 21 U.S.C. § 841(b)(1)(E)(i). *Id.*, Dkt. No. 1. The Court ordered the two cases related on March 15, 2024. *See* 23-CR-264, Dkt. No. 130; 24-CR-157, Dkt. No. 3. Defendant waived indictment in Case No. 24-CR-157 on March 26, 2024. *Id.*, Dkt. No. 8.

Defendant pleaded guilty pursuant to a combined plea agreement in both cases on March 26, 2024. *See* 23-CR-264, Dkt. No. 137; 24-CR-157, Dkt. No. 10.

Sentencing was originally set for July 2, 2024, then continued to September 4, 2024 pursuant to a stipulation by the parties filed by the defense. 24-CR-157, Dkt. Nos. 9, 14.

### C.   Guidelines Calculation

The government agrees with the Sentencing Guidelines calculation of the United States Probation Office ("Probation"), which is consistent with the parties' plea agreement and also correctly applies a four-level aggravating role enhancement for Defendant acting as an "organizer or leader." PSR ¶¶ 5–9; 51–72; 108. An offense level of 16 with a Criminal History Category I yields an advisory sentencing range of **21 to 27 months** of imprisonment. PSR ¶ 108.

The Guidelines calculation includes two groupings, one for each of the above-captioned cases.

The base offense level of the first group (conspiracy to commit wire fraud and wire fraud) is 7, pursuant to U.S.S.G. § 2B1.1(a)(1); a six-level enhancement applies as the loss was between $40,000 and $95,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(D); and a four-level aggravating role enhancement applies as Defendant was the leader or organizer that involved five or more participants, pursuant to U.S.S.G. § 3B1.1(a); and a two-level enhancement applies for obstruction, pursuant to U.S.S.G. § 3C1.1; this yields an adjusted offense level of 19.  PSR ¶¶ 53–58.

The base offense level of the second group (possession with intent to distribute anabolic steroids) is 6, pursuant to U.S.S.G. § 2B1.1(c)(17); a two-level enhancement applies for obstruction, pursuant to U.S.S.G. § 3C1.1; this yields an adjusted offense level of 8.  PSR ¶¶ 59–64.

The combined offense level of the two groupings is 19 pursuant to U.S.S.G. § 3D1.4(a); and a three-level decrease applies for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1; this yields a combined Total Offense Level of 16.  PSR ¶¶ 65–72.

### III. DISCUSSION

#### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

similar conduct;

(5)  the need to provide restitution to any victims of the offense.

**B.  Recommendation**

The government respectfully recommends that the Court sentence Defendant to a sentence of 24 months of imprisonment—the middle of the Guidelines range—followed by three years of supervised release, with an order of restitution, based upon a consideration of the Guidelines and 18 U.S.C. § 3553(a) factors. A Guidelines sentence would be suitable in this case given that the calculation appropriately accounts for Defendant's leadership role in the conspiracy and his obstruction of justice. Such a sentence would be sufficient, but not greater than necessary, based on the nature of the offense and the history and characteristics of Defendant.

First, the government's recommended custodial sentence accounts for the seriousness of Defendant's crimes and the nature and circumstances of the offenses—in particular, Defendant orchestrated a scheme to defraud in and through his position as a police officer of PPD. Defendant's fraudulent scheme, and his further distribution of Schedule III controlled substances, involved deliberate, repeated criminal conduct over a period of years involving numerous other law enforcement personnel. Moreover, Defendant took additional steps to cover his tracks by destroying evidence once he realized he might be investigated by federal authorities.

Second, Defendant's history and characteristics support the government's recommended sentence. Unlike many others that come before this Court, Defendant was a public servant sworn to uphold the rule of law. It is from this position Defendant devised the fraud scheme and distributed controlled substances, and in both instances of criminal conduct Defendant corrupted or enabled other law enforcement personnel to break the law. The violation of public trust due to Defendant's conduct was severe. On the other hand, after Defendant was charged in the Indictment and faced potential consequences for his actions, Defendant accepted responsibility by waiving indictment to an Information related to his possession with intent to distribute anabolic steroids, pleading guilty to both cases, and repaying the restitution he owed as a result of the conspiracy prior to sentencing. It is in this context that the government has recommended a sentence at the middle of the Guidelines, despite the additional aggravating factors weighing in favor of a more severe sentence.

Third, the government's recommended sentence would serve as general deterrence to others in positions of public trust—particularly sworn police officers—from committing, further organizing, and covering up such crimes. Here, Defendant committed serious offenses for his own personal gain and led a conspiracy for other law enforcement personnel to do the same, and took additional steps to conceal and hide his actions from detection—and the Court's sentence should be imposed accordingly to send a message to those who also may be tempted to commit such crimes.

The government also recommends a three-year term of supervised release for Defendant with the conditions recommended in the PSR. The expanded suspicionless search condition agreed to by the parties is appropriate to serve the interests of specific deterrence and rehabilitation given Defendant's use of electronic devices and wire communications in his crimes. While the Court should additionally order restitution in the amount of $59,598, the government acknowledges that Defendant has previously repaid $25,000 to the City of Pittsburg, and has deposited the remaining amount plus $300 in special assessments ($34,898) to the Clerk of Court pursuant to the parties' stipulation, such that Defendant has completed repayment of the expected amount of restitution at this time.

### IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 24 months of imprisonment, followed by three years of supervised release with the agreed-upon expanded suspicionless search condition and other conditions recommended in the PSR, and order restitution in the amount of $59,598.

DATED: August 27, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
ERIC CHENG
AJAY KRISHNAMURTHY
ALETHEA M. SARGENT
Assistant United States Attorneys